IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DARRYL HAMMER, | CASE NO. 3:25-CV-01119-CEH |
| Plaintiff, | JUDGE CARMEN E. HENDERSON |
| | UNITED STATES MAGISTRATE JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant, | |

**I. Introduction**

Darryl Hammer ("Hammer" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 9). For the reasons set forth below, the Court AFFIRMS the Commissioner of the Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On May 11, 2022, Hammer filed applications for DIB and SSI, alleging a disability onset date of June 1, 2020. (ECF No. 8, PageID #: 51). The applications were denied initially and upon reconsideration, and Hammer requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 22, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 71-102). On May 8, 2024, the ALJ issued a written decision finding Hammer was not disabled.

1

(ECF No. 8, PageID #: 51-66). The ALJ's decision became final on April 22, 2025, when the Appeals Council declined further review. (ECF No. 8, PageID #: 32-34).

On May 30, 2025, Hammer filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 13, 15). Hammer asserts the following assignments of error:

> (1) The ALJ's RFC conflicts with all jobs found Plaintiff can perform and the conflict was not reasonably resolved.
>
> (2) The ALJ erred in evaluating the opinions from the State agency psychological consultants, rendering the mental RFC unsupported by substantial evidence.

(ECF No. 11 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Hammer's hearing:

> The claimant is fifty-three years old. At the hearing, the claimant testified that he had mid and low back pain, which caused issues standing and walking. Additionally, he testified that he was able to stand or walk, for a time, however the pain in his back would return. The claimant further testified that he had to lie down on his right side during the day. Regarding household chores, the claimant testified that he was able to help out with some chores, however he had to do chores gradually. He was not able to wash laundry, however he was able to make a simple meal, such as a sandwich, sweep floors, and wash some dishes. Moreover, the claimant testified that he had some issues with remembering what happened on television shows he was watching, he had difficulty paying attention while his fiancé's daughter was talking to him, and he was not a social person and did not like to be around others.

(ECF No. 8, PageID #: 58).

B. **Relevant Medical Evidence**

The ALJ also summarized Hammer's health records and symptoms:

> Prior to the alleged onset date, it was noted in the file that the claimant was assaulted with a baseball bat in 2016, which caused blurry vision in his left eye. (Ex. 4F pg. 2).
>
> The claimant was seen at urgent care on May 10, 2022, with a laceration to his right leg after a wall fell on him while tearing down an old barn. (Ex. 1F pg. 1). Physical examination revealed a steady gait, sacroiliac (SI) joint tenderness, and normal muscle strength. (Ex. 1F pg. 2). X-rays demonstrated mild to moderate chronic degenerative disc disease at L3-S1. (Ex. 1F pg. 4). Additionally, the claimant was given a Tetanus shot due to the puncture wound in his right leg, and prescribed Cyclobenzaprine and Methylprednisolone. (Ex. 1F pg. 3).
>
> On September 24, 2022, the claimant was seen for a consultative examination, and he had normal muscle strength and normal range of motion. (Ex. 4F pgs. 5-8). Additionally, straight leg raise testing was negative, his sensation was intact, and he had a limping gait. The claimant was noted to have, without correction, vision of 20/200 in his left eye and 20/20-1 in his right (Ex. 4F pgs. 4, 5).
>
> The claimant was seen at the emergency room on October 2, 2022, secondary to low back pain that radiated down his left leg. (Ex. 6F pg. 5). He stated that his Lidocaine patches provided no relief, and his exam found normal mood and affect, left-sided back pain, and no gross deformities. (Ex. 6F pg. 7). X-rays showed moderate degenerative disc disease at L3-4, and severe L4-S1, with probably advanced L5-S1 facet joint osteoarthritis as well as mild anterior compression deformities of the T11, 12, and L1 vertebral bodies, likely psychologic and/or old trauma. (Ex. 6F pg. 12).
>
> Jennifer Campbell, PA-C, saw the claimant on February 3, 2023, at urgent care, and he reported abdominal pain and his right ear was clogged. (Ex. 7F pg. 2). Her exam demonstrated minimal abdominal distention, and his right tympanic membrane was retracted with minimal fluid. (Id.). Ms. Campbell recommended Flonase and Zyrtec. (Ex. 7F pg. 3).
>
> On April 12, 2023, the claimant was seen for a psychological consultative examination, and Dr. Conn's exam revealed appropriate eye contact, adequate grooming and hygiene, and he was cooperative. (Ex. 8F pg. 9). Additionally, the claimant did not

3

> show evidence of psychomotor slowing or agitation, he had a depressed mood and his affect was stable and appropriate. (Id.). The claimant further stated that he was anxious and experienced nightmares, flashbacks, intrusive thoughts, a persistent negative view, an exaggerated startle response, and he felt disconnected from others. (Ex. 8F pg. 10). He was able to count forward by three's, however he was unable to count backward by seven's, and his memory was "somewhat impaired." (Id.). The claimant was able to remember one of three simple words after a delay of several minutes, and he could recite four digits forward and in reverse. (Ex. 8F pgs. 10, 11).

(ECF No. 8, PageID #: 58-59).

### C. Opinion Evidence at Issue

The ALJ also considered medical opinions from consultative examiners Dr. Anwer Aldhaheri and Dr. Amanda Conn; the State agency consultants; and Dr. Meghana Karande. (ECF No. 8, PageID #: 61-63). The relevant opinions and the ALJ's consideration of them are set forth in more detail below with respect to Plaintiff's arguments.

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since June 1, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: lumbar spine degenerative disc disease; thoracic spine compression deformities; left eye vision loss; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl. He can have occasional concentrated exposure to extreme cold. He cannot work around unprotected heights or unprotected moving mechanical machinery. He cannot perform any occupational driving. He can perform work that does not require binocular vision (i.e., meaning he can perform tasks that could be accomplished with a patch on one eye). The claimant can have occasional interaction with the general public, supervisors, and coworkers. Further, with the general public and coworkers, his interaction should be superficial in nature defined as the ability to be in the proximity of others, able to exchange greetings and engage in casual conversation, and to consist of interactions of short duration for a specific purpose such as work-related exchanges.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8, PageID #: 54-55, 58, 64-65).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Hammer raises two issues on appeal: (1) the ALJ's RFC conflicts with all the jobs she found Plaintiff could perform and the conflict was not reasonably resolved; and (2) the ALJ erred in evaluating the opinions of the State agency psychological consultants, rendering the mental RFC unsupported by substantial evidence. (ECF No. 11 at 1).

**1. Conflict Between RFC and Available Jobs**

Plaintiff challenges the ALJ's step five finding that he could perform other work such that he was not disabled. (ECF No. 11 at 9).

At step five, the Commissioner has the burden of proof to show "that other work exists in significant numbers in the national economy" that the claimant can do based on his RFC. 20 C.F.R. § 404.1560(c)(2). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citation modified). On occasion, a vocational expert's testimony will conflict with the information included in the Dictionary of Occupational Titles ("DOT"). *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009). "In an effort to insure that such actual or apparent conflicts are addressed, the Social

Security Administration has imposed an affirmative duty on ALJ's to ask the [vocational expert] if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT'" and obtain a reasonable explanation for apparent conflicts between the expert's evidence and the DOT. *Id.* (quoting SSR 00-4p, 2000 WL 1898704, at *4).

Here, the ALJ concluded that based on Plaintiff's RFC and the vocational expert's testimony, Plaintiff would be able to perform work as a production assembler; assembler, small products; and assembler, electrical accessories. (ECF No. 8, PageID #: 65). The ALJ provided the following explanation regarding conflicts between the expert's testimony and the DOT:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. At the hearing, the vocational expert testified that the DOT does not address interaction with coworkers and supervisors, and vision issues. However, the vocational expert testified that in his experience the above stated jobs do exist in the national economy and are within the above stated residual functional capacity assessment. Considering the qualifications of the vocational expert, the undersigned adopts the opinion of the vocational expert that these jobs would be capable of being performed within the above residual functional capacity assessment. (Ex. 10E; SSR 00- 4p).

(ECF No. 8, PageID #: 65).

Plaintiff argues that despite finding that Plaintiff was limited to "work that does not require binocular vision (i.e., meaning he can perform tasks that could be accomplished with a patch on one eye)," all the jobs the ALJ concluded Plaintiff could perform "require binocular vision due to depth perception requirements." (ECF No. 11 at 9). Plaintiff asserts that the vocational expert's lone statement that he "relied on his experience … regarding the 'vision issue' simply does not provide for a reasonable explanation that resolves the conflict between the DOT and the RFC for monocular vision." (*Id.* at 10).

The Commissioner responds that the ALJ permissibly relied on the vocational expert's

8

testimony, which was based on his experience. (ECF No. 13 at 6). The Commissioner asserts that "before relying on VE testimony, the ALJ must (1) ask the VE about any possible conflict and (2) obtain a reasonable explanation for the apparent conflict" and because the VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), "the ALJ did all that she was required to do." (*Id.* at 6-7).

Plaintiff replies that he "demonstrated conflict between all jobs found by the VE and the DOT due to the fact Plaintiff is blind in one eye and cannot have depth perception" and the vocational expert's experience "does not satisfy a reasonable explanation for such an obvious conflict." (ECF No. 15 at 2).

While Plaintiff frames his argument as challenging the ALJ's failure to resolve a conflict between the vocational expert's testimony and the DOT, there is no "apparent conflict" between the DOT and the expert's testimony. Plaintiff's argument focuses on the identified jobs each having a requirement for depth perception. *See* DOT 706.687-010 (occasional depth perception for production assembler); DOT 706.684-022 (frequent depth perception for assembler, small products); DOT 729.687-010 (frequent depth perception for assembler, electrical accessories). However, the vocational expert's testimony did not contradict this requirement but rather indicated that the jobs could be performed even with the limitations identified by the ALJ. Notably, while the ALJ included in the RFC that any work "not require binocular vision (i.e., meaning he can perform tasks that could be accomplished with a patch on one eye)," the ALJ did not include a limitation regarding depth perception. (*See* ECF No. 8, PageID #: 57). Thus, Plaintiff's argument is actually challenging the ALJ's RFC finding and its lack of a depth perception limitation.

However, even framing Plaintiff's argument as a challenge to the RFC, his argument

9

fails. Plaintiff does not cite any evidence in the record to support that he had issues with depth perception. (*See* ECF No. 11 at 7-10). Nor did Plaintiff's counsel argue at the ALJ hearing that Plaintiff experienced any issues with depth perception. (*See* ECF No. 8, PageID #: 71-102). Despite failing to raise the issue to the ALJ, Plaintiff now raises the depth perception issue for the first time in this Court, citing two internet articles indicating that "[f]or accurate depth perception, you *generally* need to have binocular (two-eyed) vision" and "[b]ecause your depth perception depends on information from both your eyes and your brain, anything affecting your overall vision *can* impact your depth perception." (ECF No. 11 at 10 (emphasis added)). However, the use of "generally" and "can" in these sources is far from conclusive evidence that the lack of binocular vision *always* amounts to issues with depth perception. In fact, one article Plaintiff relies on explicitly indicates that while "[p]eople who rely on vision primarily in one eye … may struggle with depth perception," "some people who have had good vision in one eye for a long period of time may find they have acceptable depth perception." Kierstan Boyd, *Depth Perception*, American Academy of Ophthalmology (Mar. 23, 2018), https://www.aao.org/eye-health/anatomy/depth-perception. Plaintiff failed to cite *any* evidence in the record to support that he actually suffered limitations regarding depth perception. Further, the ALJ's RFC is supported by substantial evidence. Accordingly, the ALJ did not err in failing to include a depth perception limitation in the RFC and Plaintiff's first argument is meritless.

**2. Consideration of Medical Opinions**

Plaintiff next argues that the ALJ erred in evaluating the opinions from the State agency psychological consultants such that the mental RFC is not supported by substantial evidence. (ECF No. 11 at 10).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering

10

all relevant medical and other evidence. 20 C.F.R. § 416.920(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 416.920c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors. 20 C.F.R. § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

Here, at both the initial and reconsideration level, the State agency psychological consultants concluded Plaintiff was moderately limited in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (ECF No. 8, PageID #: 122, 133). The following additional explanation was provided: "He can interact w/others on a brief superficial basis. Since his accident he claims

11

that all other people are 'stupid', and he does not want to deal with them. He is able to maintain his relationship with his girlfriend and presents as positive during medical appointments." (*Id.*). The ALJ provided the following explanation of her consideration of the State agency opinions:

> The State agency psychological consultants found that the claimant could interact with others on a brief and superficial basis. (Ex. 4A pg. 8; Ex. 6A pg. 8). The undersigned has considered these prior administrative medical findings and concludes that they are generally persuasive. The findings may be supported by the evidence reviewed by the State agency consultants; however, they are not entirely consistent with a complete review of the medical records. The evidence does not support relating the limitation for superficial interaction to the claimant's interactions with supervisors. During his consultative examination, the claimant did not report interpersonal conflict with supervisors, and he had not been terminated from a job due to behavioral, or interpersonal, issues. (Ex. 8F pg. 13). As such, while it would be reasonable to limit all exposure (supervisors, co-workers, and the public) to an occasional basis, the record is not consistent with a limitation for only superficial interaction with supervisors. The undersigned has accounted for the finding limiting the claimant to brief interaction with others by including a limitation for occasional interaction with supervisors, co-workers, and the general public and superficial as to the general public and coworkers.

(*Id.* at PageID #: 63).

Plaintiff argues that because the State agency consultants did not "distinguish between supervisors, co-workers, or the public," the ALJ erred in failing to include a limitation to superficial interaction with supervisors despite including the limitation as to co-workers and the public. (ECF No. 11 at 11). Plaintiff asserts that the ALJ rejected the opinion because the record did not show interpersonal conflict with supervisors, but the record "also showed no problems with co-workers," and the ALJ failed to provide a reasoning why the superficial interaction limitation was not applied to supervisors. (*Id.* at 13). Additionally, Plaintiff argues the ALJ ignored evidence that would support likely problems with supervisors. (*Id.* at 13-14). Finally, Plaintiff argues that "the ALJ stated the opinions are 'not entirely consistent with a complete

12

review of the medical records,' but the ALJ only points to the consultive examination which [the State agency consultants] clearly reviewed themselves" such that it is "unclear what additional medical records the ALJ relied upon to discount the State agency psychological opinions." (*Id.* at 14).

The Commissioner responds that the ALJ "properly analyzed the persuasiveness of the prior administrative medical findings, 20 C.F.R. § 404.1520c(b), and reasonably limited Plaintiff to occasional and superficial interaction with coworkers and the public and occasional interaction with supervisors." (ECF No. 13 at 8). The Commissioner argues that the consultative examiner's report Plaintiff cites provides substantial evidence to support the ALJ's decision that Plaintiff was capable of more than superficial interaction with supervisors and the "fact that the ALJ could have used the consultative examiner's report to find Plaintiff *less limited* than the ALJ did—i.e., capable of more than superficial interaction with both supervisors and coworkers— does not undermine the substantial evidence supporting the ALJ's decision." (ECF No. 13 at 9).

Plaintiff replies that "if [he] can interact with all 'others' on a brief, superficial basis, there was no proper basis for the ALJ to distinguish between co-workers, the public, and supervisors." (ECF No. 15 at 2-3 (record cite omitted)).

The Court agrees with the Commissioner. The ALJ's decision makes clear that he considered both the supportability and consistency factors and found the opinion's limitation to only superficial interaction with supervisors was not consistent with Plaintiff's statements during the consultative examination. (ECF No. 8, PageID #: 63). Notably, in describing his past three jobs to the consultative examiner, Plaintiff "denied getting in any arguments or trouble," reported that his employers "loved" him, and he performed at "a 10 anywhere" he worked. (*Id.* at PageID #: 442-43). Based on this, the consultative examiner indicated that "the claimant did

13

not endorse any interpersonal conflict with supervisors or coworkers while on the job and has never been terminated from a job for behavioral issues or interpersonal conflicts." (*Id.* at PageID #: 450). The ALJ reasonably relied on this evidence to support that the State agency opinions limiting Plaintiff to only superficial interaction with supervisors were inconsistent with the overall record. As the Commissioner argues, the fact that the ALJ could have drawn different conclusions from this evidence—for instance, that Plaintiff was also not limited in his interactions with coworkers—does not negate that it is substantial evidence in support of the ALJ's ultimate conclusion. *See Robbins v. Comm'r of Soc. Soc.*, No. No. 24-3201, 2024 WL 4603964, at *5 (6th Cir. 2024) (ALJ's finding that plaintiff could properly interact with supervisors and coworkers was supported by plaintiff's own testimony that he worked "decently well" with classmates on projects and "merely cit[ing] competing evidence" was insufficient to challenge ALJ's conclusion). Accordingly, Plaintiff's second argument also fails.

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED. Dated: January 22, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE